IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLY BARGER,

                Plaintiff,

             vs.                             Case No. 14-1272-JTM

CAROLYN W. COLVIN, Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER


Plaintiff Kimberly Barger has applied for Social Security supplemental security income benefits.  Her claim was denied initially and on reconsideration. After a November 27, 2012 hearing, her application was denied by the Administrative Law Judge (ALJ) on January 25, 2013. The Appeals Council declined to review this determination, rendering final the denial of benefits. In the present appeal, Barger alleges that the ALJ's decision does not rest upon substantial evidence, and that the ALJ erred in assessing her credibility.

Plaintiff-claimant Barger was born on July 28, 1968.  She has stated that she became disabled by September 27, 2010, citing "nerve damage, DDD (degenerative disk disease), facet arthritis, depression, bipolar, back osteophyte, numbness in left leg and foot, low

thyroid, loss of muscle control, and migraine headaches." (Tr. 173). She has previously worked as a deli clerk, stamper, circuit board assembler, and sales route driver. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion.

The ALJ found that Barger had the severe impairments of degenerative disc disease, and back and affective disorders under 20 C.F.R. § 416.920(c). However, she also determined that while Barger has a history of migraine headaches, there is no evidence that these are severe. The headaches are managed by medication, with a number of scans yielding normal results. The ALJ further found that Barger's impairments, whether alone or in combination, do not meet the severity standards of 20 C.F.R. § Part 404, Subpart P, Appendix 1.

In determining Barger's residual functional capacity (RFC), the ALJ found that the claimant can still do "simple, routine, repetitive tasks." (Tr. 16). She can "perform a less than full range of sedentary work[,] can occasionally climb ramps and stairs, stoop and crouch, but must avoid ladders, ropes and scaffolds, unprotected heights and hazardous machinery. She is able to have occasional interaction with coworkers, but no interaction with the general public." (*Id*.)

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support

a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zoltanski*, 372 F.3d at 1200.

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243

(10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a medically severe impairment or combination of impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis in original). The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. *Lax*, 489 F.3d at 1084; 20 C.F.R. § 404.1520(e). The claimant bears the burden in steps one through four of proving disability that prevents performance of her past relevant work. 42 U.S.C. § 423(d)(5)(A); *Lax*, 489 F.3d at 1084.

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted). The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and

4

laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009).

While Barger now asserts an onset date of September 27, 2010, for disability due to the impairments previously described, in her August 29, 2011, consultative examination by Dr. T.M. Venkat at Coffeyville Doctors Clinic, she reported that she had "all of the above-mentioned problems since 2004." (Tr. 568-69). That is, the impairments began with her report of an assault in which she was "pinned ...  against her car in the parking lot." (Tr. 18.) Barger was not hospitalized following the report, and has not worked since then. Prior to the present request for benefits, she has filed four unsuccessful applications for disability insurance benefits, and one unsuccessful application for supplemental income benefits.

Barger underwent artificial disc (L-5) replacement surgery in March, 2007, and her mother and daughter began to receive payments from Southeast Kansas Independent Living (SKIL) an assistance agency, to help her with daily living needs and do household chores. Barger has received no additional treatment since the surgery. She has seen neurologists, but all testing has been negative. (Tr. 18-19).

Barger watches television, reads, does puzzles, plays Yahtzee, and goes out to play bingo several times a month. She naps several hours a day. She sometimes becomes dizzy and has experienced two falls in the last year. She reported such falls in two emergency

5

room visits during the year prior to the ALJ hearing. She feels stressed because of her financial condition. She does not drive, although no doctor has told her to avoid driving. There is some evidence that she "[h]istorically has been a fairly heavy drinker, Captain Morgan being her friend of choice." (Tr. 618)  However, the record does not indicate that her drinking "is signficant or material to the finding of disability." (Tr. 19).

On September 25, 2012, Dr. Lee reported that Barger had "[n]o recent falls," with one exception. On the Fourth of July, after having a few drinks, she "sat down on the lawn chair with it folding in on her." (Tr. 608).

The ALJ examined in detail Barger's medications and treatment following her surgery, including her emergency room reports of August 30, 2011, and October 27, 2011. In the first visit, to the Neosho Memorial Regional Medical Center, she reported back pain stemming from the fall from the lawn chair. The therapist at the emergency room applied moist heat and recommended stretching for the lumbar region. Barger received pain medication and a home exercise program. Her rehabilitation potential was rated at "Fair." (Tr. 597).

When Barger returned to the emergency room in October, she reported that she "was listing to the left," and had started having slurred speech. (Tr. 591). Further, the treatment notes indicate Barger

> is on multiple medications for chronic pain issues to include migraine headaches and degenerative disc disease. In fact, the patient states that she needs stronger medications even though she is taking so many. She requests Vicodin or Oxycodone. The patient denies any specific weakness, but states that she lists to her left.

(*Id.*) The notes further state that Barger "denies any falls or trauma." (*Id.*)

In the examination, Barger was "alert and oriented and appear[ed] to be in not acute distress." (*Id.*) She reported having similar symptoms on September 2, 2011, when her daughter was married. "The family states that the patient appeared to be intoxicated." (*Id.*) Barger was then taking numerous medications, including Etrafon, Wellbutrin, Celebrex, Flexeril, Duragesic, Neurontin, Maxalt, and Zoloft. The notes by Dr. Mark Wendt (D.O.) conclude that the symptoms were "probable medication side effects" and that "[a]lcohol probably plays a part here." (Tr. 592). Dr. Wendt changed Barger's medications, and noted that "I could not find any neurologic deficit during my examination which is reassuring and her CT scan was negative." (*Id.*) She was released in stable condition.

Barger returned to the emergency room on November 14, 2011, reporting weakness in the extremities, headaches since November 12, and impaired speech. Dr. David Gurnsey reported that an MRI "was within normal limits," and that "[o]n a normal basis, the patient is usually alert and oriented." (Tr. 581). A CT scan was conducted which was also normal. Barger told Dr. Gurnsey that her family has told her that she has altered mental states, but "this was not noted while she was in the Emergency Room" (*Id.*) Dr. Gurnsey gave Barger some medication for headaches and she "rested well in the Emergency Room Department." Dr. Barger concluded that Barger displayed "no evidence of gross deficits that persisted through her Emergency Room stay, which also leads me to believe that these may be related to neurologic headaches or a pseudo event of some sort." (*Id.*) The notes explicitly "rule-out TIA [transient ischemic attack] in October of 2011." (*Id.*)

Dr. Devendra Jain of Parsons, Kansas, examined Barger in connection with her complaints of headaches, on October 24, 2011, November 17, 2011, and April 16, 2012. In the first visit, Barger reported that the August 30 emergency room visit was for slurred speech. She stated she was taking Depakote, that "she tolerated this medication very well," and "[h]er headaches frequency and severity have significantly decreased." (Tr. 601). Dr. Jain noted that Barger had been "discharged from the ER without any significant instructions," other than an adjustment in her Flexeril prescription. (*Id*.) Dr. Jain adjusted her medications.

Barger and her mother returned to Dr. Jain shortly after the October 30 emergency room visit. Dr. Jain noted the normal results of the MRI, and further noted her medications. Dr. Jain concluded that Barger might have experienced a TIA, but also recognized that her symptoms might be caused by "seizure disorder, a complicated migraine, [or] a drug effect." (Tr. 600). Dr. Jain again adjusted her medication.

Following the April, 2012, examination, Dr. Jain noted that Depakote and Topamax appeared ineffective in dealing with Barger's migraines, but that Barger takes Maxalt "as needed for migraine headaches and the patient reports that it seems to help her." (Tr. 599). Dr. Jain noted that Barger was scheduled to be examined by a neurologist at KU Medical Center.

Barger told Dr. Venkat in the consultative examination that "she is able to take care of most of the activities of daily living by herself." (Tr. 569). She told him she had migraines "about once or twice a week." (*Id*.) She indicated she had medication for the migraines. She

8

did not indicate the medication was ineffective, but stated that she sometimes has nausea with the migraine. "[I]t does not bother her every day." (*Id*.) Dr. Venkat noted Barger's history of disc disease, but found no difficulty or minimal difficulty in her movements. (Tr. 572).

The ALJ noted the results of Dr. Venkat's examination, along with assessments of Barger's global assessment of functioning (GAF) conducted by Southeast Kansas Mental Health in the 2010 to 2012 period. These generally indicated GAF scores increasing from 50, to later scores of 57 or up to 63. Such scores indicate moderate or mild symptoms. (Tr. 20).

While Barger testified that she had been to the emergency room twice in the last year because of falls, an examination of the actual visits indicated that the visits were largely "for other reasons." (Tr. 19). There was a direct discrepancy as to the frequency of Barger's migraines. She testified at the hearing that these occurred several times a day. Barger told Dr. Venkat they occurred once or twice a week. Further, while Barger reported the existence of such headaches to Dr. Jain, there is no indication that the headaches were not controlled with medication. Rather, the medication had appeared to reduce the frequency and severity of the headaches. Barger testified that she has difficulties in memory and concentration. The ALJ found that this testimony is inconsistent with Barger's activities of daily life, which include reading, playing games including bingo, and doing puzzles. (Tr. 21) While Barger complains of side effects from her various medications, such concerns have not appeared in the treatment records. Barger's treating medical sources have

recommended she exercise, and she has stated that she had been undergoing aquatics therapy. Such therapy is not reflected in the records. The treatment notes indicate that Barger is walking four times a week, which the ALJ found was inconsistent with her testimony that she can stand for only brief periods. Finally, the ALJ noted Barger's extremely limited work history and lack of motivation to work, including numerous comments that it is "her pursuit of disability benefits [that] is depressing her." (Tr. 22).

The plaintiff argues that the ALJ erred in failing to give the opinion of Dr. Lee controlling weight. Here, the ALJ noted that Dr. Lee had presented several statements. The first, addressing the claimant's mental state and which indicated moderate limitations on the ability to work she granted some weight, because it was consistent with other evidence in the record. However, the ALJ accorded only limited weight to a medical source statement by Dr. Lee addressing Barger's physical condition. The ALJ explained:

> Dr. Lee also completed a medical source statement-physical on May 23, 2011 indicating the ability to perform a reduced range of light work. He limited lifting and carrying to 20 pounds frequently and 25 pounds occasionally with sitting 4 hours in an 8 hour day and standing/walking 3 hours in 8 hour day with occasional postural limitations and some environmental factors. This assessment is consistent with the medical evidence to the degree reflected in the above residual functional assessment limiting the claimant to a range of sedentary work. However, Dr. Lee then completed the same form on November 5, 2012 indicating limitations to less than sedentary work. He reported the claimant could sit less than 1 hour in an 8 hour day and stand or walk less than 1 hour in an 8 hour day. This assessment is given little weight as there is no support for the significant decline in function. The treatment records indicate the claimant is stable. This form appears to be completed based on the claimant's subjective complaints. Again, it is adequate for consideration, but is insufficiently supported in the record.

(Tr. 22-23 (record citations omitted)).

A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.*

Medical opinions are weighed by evaluating all relevant factors including: (1) an opinion source who examined the claimant is generally given more weight than one who has not; (2) an opinion source who treated the claimant is generally given more weight than one who has not; (3) the length, nature, and extent of any examining or treatment relationship; (4) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (5) how well the source explains the opinion; (6) whether the opinion is consistent with the record; (7) whether the source has specialty related to the claimant's impairments; and (8) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight ex rel P.K.*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

The court finds no error in the ALJ's treatment of the physical and mental statements from Dr. Lee, a decision grounded on the record as a whole, but in particular the

substantial change in the November 2012 physical assessment without underlying objective support in the medical record. The 2011 assessment, indicating that Barger could perform sedentary work, was well supported in the evidentiary record. Treatment notes in the intervening period indicated generally that Barger was exercising and test results were normal. The November 2012 statement provides no explanation at all for the radically different assessment, and cites no objective examinations or test results to support the new finding.

The court also concludes the ALJ did not err in treating Dr. Lee's mental assessment. The ALJ noted there were no indications of decompensation. According to the relevant treatment notes, Barger's attention, concentration, recall and memory appeared to be normal. Evidence from the record generally indicated that with medication Barger was able to act with only mild or moderate limitation due to her depression.  (Tr. 22). The ALJ further noted (Tr. 23) the results of other medical evidence, including the examination by Dr. Venkat and consultative reports filed by Dr. Robin Reed, state agency consultant Carol Adams (Psy.D.), and Dr. Paul Kindling. Dr. Reed concluded that Barger had moderate limitations on her ability to carry out detailed instructions and to interact with others, but she could perform "simple to intermediate work." (Tr. 71). Ms. Adams reached the same conclusion. (Tr. 439). And Dr. Kindling found that Barger should refrain from climbing, stopping, and crouching, but indicated that she could perform sedentary activities. As a result, she "would be limited to jobs that do not require frequent public interaction but she can interact appropriately with co-workers and supervisors." (Tr. 77). Finally, the ALJ

noted the claimant's activities of daily living and concluded that while these indicated

moderate difficulty in social function, her activities were generally sufficient to justify

giving Dr. Lee's 2012 assessment only some weight..

The plaintiff next argues that the ALJ erred in concluding that her subjective

statements were less than fully credible. In rendering a credibility determination, the ALJ

"must consider the entire case record, including the objective medical evidence" to

determine whether plaintiff's subjective claims of debilitation are credible. SSR 96-7p, 1996

WL 374186, at *1 (July 2, 1996). A claimant's subjective complaints are evaluated for

credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether the impairment is reasonably
> expected to produce some pain of the sort alleged (what we term a "loose
> nexus"); and (3) if so, whether, considering all the evidence, both objective
> and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834

F.2d 161, 163-64 (10th Cir. 1987)) The ALJ need not make a "formalistic factor-by-factor

recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.*

(citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination

'must contain specific reasons for the finding on credibility, supported by the evidence in

the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the

weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden*

*v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4).

The court finds no error in the ALJ's credibility assessment. Here, the ALJ noted

specific and legitimate rationales for discounting the plaintiff's credibility. For example, the ALJ identified medical evidence indicating that Barger's headaches were stable with medication, and the record failed to indicate any substantial negative side effects to her medication. Additionally, the medical evidence was markedly inconsistent from Barger's hearing testimony as to the frequency of the headaches. There were additional inconsistencies between Barger's subjective statement as to her physical abilities and medical records indicating more substantial activities in walking and participating in aquatics therapy.

IT IS ACCORDINGLY ORDERED this 24th day of July, 2015, that the present appeal is hereby denied, and the decision of the Commissioner is AFFIRMED.


 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

14